Good morning, Your Honors. We're at the DuPont hearing on behalf of Jack Liu, United Union v. Schiltgen. You have to kind of keep your voice up, please. Basically, what we're complaining of at the appellate stage is error on the part of the district court. I just can't hear you. Oh, okay. I'm hearing you, too. All right. I'll speak up. Okay, yeah. All right. We're complaining of error on the part of the district court in, first of all, denying discovery and granting summary judgment, and removing this case from the court docket. The first issue of error was its refusal to compel discovery into wit deposition of INS officers, and ratifying defendants' position that there should be no discovery beyond the appellate record, even where we have serious constitutional issues of discrimination and bias raised, which would go well beyond what you would normally find in an administrative record. We also complain of error in failing to recognize that sufficient evidence was offered to sustain a burden of proof to frustrate a summary judgment motion, and, more specifically, error in failing to find three disputed tribal issues of material fact. I'd also like the court to note that no written opinion was issued by the court. I'm also having trouble hearing you. All right. I also. You know, it's like you took public speaking in junior high school. You've got to project your voice. You've got to modulate it. You've got to have passion in what you say. All you're doing is sort of mumbling, you know. And so just, you know, we'll be three judges in this oratorical contest. All right. I'll try and loosen up here, I think. Yeah, loosen up. You want a drink of water? A little bit of nerves. Don't be nervous. No. I've been here before. I don't know what came over me today. What did you say? You've been where? I've been to Ninth Circuit before. I don't know what came over me today. People do what? What did you say? No, you've got two really nice judges here. All right. Yeah. Beyond district court error, the last thing I wanted to mention is that we do have new case law from the Second District, First Land v. INS, which has taken a very strict reading of 8 U.S.C. Section 1155 dealing with the issue of visa revocation and whether you can revoke a visa if you have not given notice to the visa recipient prior to him leaving his home country. And in this case, the revocation of appellant's visa is the major basis that he cannot proceed forward with his adjustment of status or green card. So I did want to bring that to the Court's decision. What case are you talking about? It's called First Land v. INS. It's a Second District case decided in August 2004. What do you mean by the Second District? Pardon me? Second Circuit. Second Circuit. Oh, I'm sorry. I'm sorry. Second Circuit. First Lane. In New York. First Land v. INS. I did submit supplemental notice of this case to the Court, and it deals with the strict reading of 8 U.S.C. Section 1155. With regard to the major complaint and first error, which I believe was committed by the Court, was the failure to allow deposition of several INS officers. We had in this case requested that officers be made available for deposition, officers Rick Fleming, Manuel Rios, Martin Harnage, and three other individuals. In this, we wanted to determine what was some of the decision process in how these Chinese immigration cases were being handled, because what we had found was a pattern of visas being granted, Chinese immigrants coming here, working as a multinational exec, running a subsidiary company for a parent company overseas, and then when they applied for their adjustment of status, which Congress had made provisions for them to do, they encountered delay and sandbagging by the immigration service. So what is it you wanted to find out through discovery? First of all, we wanted to find out if, in fact, as we allege, every single one of these individuals has their cases sent to overseas investigation, regardless of the merits of their case. I understand. So what would your cause of action be, then, if it were true? So suppose the INS said, suppose they had a written policy that said, we have found out that people who are coming from China, not Chinese people ethnically, but people coming from China, Chinese nationals, are more prone to manufacture these kinds of business issues for visas than other people, and therefore, we are going to undertake specially stringent investigations. And moreover, maybe we don't want so many people coming from China and we'd rather have fewer of them. Is that under, after Arab America and all that, is that a cause of action? I think there's nothing wrong with the INS or Department of State saying, we see a certain problem in this country if they're going to conduct investigations and conduct the processing in good faith. But what we had here was a drastically understaffed office overseas, incredible backlog so that most of these overseas investigations would not take place unless officers specifically filed requests to expedite that type of overseas investigation. The INS is notoriously slow about a lot of things. The question is, is there any case that you're aware of in which slowness or lack of staffing has given rise to a cause of action against the INS? If the laws are in place, I would just go to Administrative Procedures Act, which there are multiple cases, I just can't pull one off the top of my head. But if you file an application, you demonstrate the merits of your case and you're entitled to adjudication of your case. In the integration area? Yes. And you're not entitled to interminable delays. What are the multiple cases? Pardon me? What are some of the multiple cases? Oh, God. This is kind of, I'm not pulling one off the top of my head right now. This is what your case is about, and you want to know what they are. All right. Let's see if I have anything handy here. All right. Go ahead. I'm not aware of it. But basically, basically, this response attack has been what you're complaining of is selective prosecution, and that's been their reference to case law. And our position is we're not dealing with selective prosecution. Your problem isn't that they're doing this particularly to Chinese nationals. It's just that they're really slow. Pardon me? Your problem isn't that they're doing this particularly to Chinese nationals. Your problem is they're just too slow. No. The problem is they are doing this particularly to Chinese nationals, and we do have evidence on the surface which supports that. We have multiple examples of the memorandum of District Director Richard K. Rogers, which says individuals from Taiwan, China, and Hong Kong are engaged in fraud, and therefore we're sending this case to overseas investigation. That was a boilerplate memo which we believe was issued thousands of times. Suppose they had done that, but they had done it expeditiously. If they had done it expeditiously and there was a procedures in place to conduct these overseas investigations, then they're operating in good faith. So the problem isn't the selective prosecution. That's what you're telling me. It's not. So the problem is that they're not doing it expeditiously. Well, it's not just that, and that's why I'm saying selective prosecution puts the wrong sort of twist on this approach. It's a selective denial of the benefit. They're perfectly happy to grant the visa, allow these people to come here and work, but when it comes down to getting your legal permanent residency, that's where they're encountering the resistance and the delay and the bad faith delay tactics. Didn't they revoke the visa? And what we're looking at — Wasn't Mr. Lowe's visa eventually revoked? Yes. His visa was approved for three years. Within three or four weeks of him asserting jurisdiction in district court, we encounter adverse administrative action in terms of the revocation proceeding. And I'd like to point out — Did Judge Reel, did he rule, correct me if I'm mistaken, did he rule that he had no jurisdiction here? He brought the case out on that basis. It wasn't really clear to me, other than if he was adopting all the positions set forth in the statement of facts and law by the — by Respondent. But I do know his parting comment was he felt that this was an issue to be taken up with the legislature, not taken to his court. Okay. Why don't you have a seat and we'll hear from the government. We'll give you a minute for rebuttal. May it please the Court, Your Honor. I'm Assistant U.S. Attorney Carla Ford representing the apologies in this action. At bottom, this case is about the denial of the I-485 application — adjustment of status applications. And the Court is correct in pointing out that what the Lews really complain about is the fact that they think it took too long for that process to occur. This was initially a mandamus action at a time when the 485 applications for adjustment had not yet been adjudicated fully, and that was going on. Over the course of the pendency of this case, the 485 applications were, in fact, denied because of the revocation of the I-40 visa petition that Mr. Lew had had approved before. So what's left here? If it's not delayed because the delay is over, we can't fix that. Exactly. What's happening? And, well, the position — the government's position has always been the case is about mandamus. The mandamus complaint was met because the 485 applications were, in fact, adjusted. And now the — They weren't adjusted. They were denied. They were denied, Your Honor. They were denied because the visa application was revoked. Correct. And so that aspect of the case is now over. What is left in the case is the Lews' contention that they needed to have discovery on their discrimination claims. Because there's a pending Bivens action? No, Your Honor. There are allegations of discrimination within the mandamus complaint. And we moved for summary judgment on many bases, but one of them was that there was no jurisdiction for subject matter over discrimination claims in that case because this was, at bottom, an APA issue. And addressing the — looking at the case under the Administrative Procedures Act, there was no violation. In point of fact, the Lews have never pointed out any sort of issue or problem with either the decision that was made or the way the court arrived — sorry, the way the agency arrived. Are there any cases in which the delay issue, in which there have been mandamus proceedings with regards simply to delay over questions like this? There are constantly cases. I know. Are there ones that have succeeded? I'm not aware of a reported case in which there were findings by a court that because of a delay by the agency that the Lews — people in the Lews' position are somehow entitled to some relief other than the expedited processing of whatever application has to be signed. But it's conceptually possible that there would be jurisdiction over an action that said this is just taking way too long and the APA doesn't allow it. Your Honor, without having the specific official position of the INS, now the Department of Homeland Security, I can state as a practitioner who sees these cases every day that there are some judges who take the position, some district court judges who take the position that they do have jurisdiction to make the agency do its job more quickly. Our position has been that we are doing the job as quickly as we can and we're trying to get these done, and we will try to get this one done, Your Honor, expeditiously. But our position is that the courts don't have jurisdiction to tell us any more than do the job. They don't have the jurisdiction to say do the job right now. That's our position. But here that's by the boards because, in an injunctive sense, because, so are we now left with the question of whether essentially because it took as long as it did to investigate the adjustment, therefore, there was time to revoke the visa, which wouldn't have been, and otherwise the other thing would have been first? Is that the argument? No, practically speaking what happens in this case and many others is that the alien is here, is brought here on an L1 visa. That is they work for a company back in their home country, they're coming to this country to continue working for that company, and so they're here as a non-immigrant working for that company. Then they are here for a time and there's a finite period of time for which that visa is effective. While they're here, somebody makes the decision that the alien needs to apply for adjustment of status, and so they file an application, and that's what happened here. I think the I-140 visa was approved in 96, and then Mr. Liu applies for adjustment along with his family in 1999. At that time, the agency is looking at whether or not they meet the criteria for that, for 485 adjustment. Oftentimes an investigation may ensue if questions arise in connection with the type of applicant you have coming to the agency. In this case, it's a manager. Which then leads to the revocation of the visa, essentially. Excuse me? Which then leads to the revocation of the visa. Exactly, and so what needs to be understood here is that the agency is authorized at any time to do an investigation if it feels it's warranted. The fact that they didn't do one before doesn't mean that they can't initiate one later. And that, I think, is what the Lius and others like them may complain about, that the agency does an investigation. And looking at the quote-unquote evidence that the Lius have put forth as discrimination, which in the record I believe is excerpt of record pages 725 and 726, it is a form memorandum from the district director to the agent in charge in Hong Kong saying we'd like to have an investigation of this particular alien because we found in our adjudication of these cases that there may be fraud occurring in connection with people who are trying to establish their relationship with their subsidiary or parent company and this manager who is seeking adjustment of status. And that's based upon not the fact that the Lius or anybody else from that home country are Chinese, as in this case, but because there's been evidence having to do with people from not only the People's Republic of China, but also people from Hong Kong, and also people from Taiwan. And it's also important to remember that we're only talking about a particular category of visa adjustment. We're only talking about folks who are trying to be adjusted as managers under the management exception that applies only to a very small sliver of people trying to get adjustment of status as managers. So that I think that the contention by the Lius was never supported that this was discrimination. What the record does show is that the agency determined to undertake an investigation in connection with the Lius just as they had done with several other immigrants and it's also important to note, Your Honors, that 725 and 726 in the excerpt of record are not naming the Lius at all. Those name other, they name other people. So that makes it even more remote. What about the Firstland case? Is that pertinent at all? Well, the Firstland case, I would say not for the purpose of this case since it's not obviously Ninth Circuit authority. Firstland does squarely address the issue of 1155 and whether or not there's discretion in the Attorney General to be able to revoke the I-140 visa. It has application because it is squarely dealing with that statute. The reason it's not important, I should say, not important, but inapposite in this set of facts in this case, is because the Lius never raised it. They didn't raise it below. They didn't raise the argument that 1155 somehow should preclude the Attorney General from revoking the visa. The statute's been there. It was an argument that the Lius should be revoked. It was an argument that they could have made, and the government would submit today that they have waived that argument. But did Judge Reel find that there was no jurisdiction in it? Judge Reel, Judge Reel did make such findings because that was in the findings of fact and inclusions of law that the defendants submitted in their statement of undisputed material facts. The court also, however, adopted the merits of the case that were submitted in that statement of facts. And so you could say that, yes, he did find there was jurisdiction, but assuming that that wasn't sufficient and that reaching the merits was warranted, then the court also made findings as to the merits of the claim that there was an APA violation by the agency. And, of course, the facts that Judge Reel adopted demonstrated that there were no such violations. Unless there are further questions from the Court, we submit. Your Honor, Congress has provided the ability for businessmen to open the case to the public, and we have provided the ability for businessmen to open the case to the public. And we have also provided the ability for government subsidiary companies, run them here in the U.S., and apply for legal permanent residence. They did not, Congress did not intend for the INS to develop this system, this ability to take every single one of these individuals and put them into an overseas investigation that they knew would never be completed. But it was completed. Pardon me? It was completed. Well, they would be completed. What remedy are you looking for? I'm really thoroughly confused. What is it you want now? Well, what I want now is, first of all, we have complained of several other violations of the regs, mainly failure to review these cases as they're being held in abeyance. District directors required to do a 12-month and then 6-month review on every one of these cases that's being held in administrative abeyance. So we have complained of a pattern of misconduct and how these cases are delayed. You're looking for a visa to come back? I remember I went and sat in the British courts, Old Bailey, and the judge would look at the lawyer or the barrister and he'd say, well, what can we do for you today? Yeah. So that's what the judge is asking. What do you want? Maybe you don't know what you want. What is it you want? Okay. Here's what I want. First of all. You've got 30 seconds to tell me what you want. First of all, a declaration that the revocation was improper, contrary to law. Revocation of the visa. Revocation of the visa. And retaliatory for asserting jurisdiction in district court. What you're looking for now is a change. You're looking for the district court to change the decision with regard to the revocation of the visa. Right. Not the adjustment of status. Well, the adjustment of status was denied based on revocation of the visa. So now we're also vacating the decision on the adjustment of status. So I want to vacate a decision on revocation of the visa and also a reversal of the decision on the denial of adjustment of status. The delays are over, right? So we need some other basis. Well, and then the ability to conduct discovery. Simple discovery. Depositions of officers who are making these decisions and adopting the positions of their superiors who are essentially saying, A, under District Director Richard K. Rogers, if they're Chinese, send them to investigation. And B, California Service Center Director Donna Koltis, who was essentially saying, none of these individuals can demonstrate funding to create a subsidiary, a parent subsidiary corporation. They're telling this to the officers. They're getting the training. We also would like to know what kind of repercussions happen to officers who do find the merits, do want to approve these cases, and are criticized by the superiors. Where do you live? Pardon me? Where do you live? Los Angeles. What part? Near Ladera Heights. Who's your congressman? I think it's Berman. I could be wrong. Berman doesn't go to Ladera Heights. Yeah. Is it Neapolitano? I'm not sure. What you have to do is make an appointment. Go see your congressman and tell him what's happening. Well, Congress has already done its part. They've said, here's a statute. They can hold hearings and they can get to the bottom of these things. Right. And they've got really good subpoena power. And I think it's great to have an act of Congress that's going to take an interest in these cases, but I also think probably a lot less taxing on the system if I could simply conduct a deposition and ask these officers what kind of training they get, how they make their decisions, are they sending every single Chinese businessman's employment visa to overseas investigation with full knowledge that will never come back for adjudication. All right. Thank you. And the matter is submitted. Thank you, Your Honor. And the next one, Harding v. New York Life. It's been submitted. That's submitted. Oh, lucky. And the next one is Mason v. United States. That's submitted. And Martinez v. Thompson. That's right. Huh? That's submitted too? That's right, Your Honor. What's wrong with you? All right.
judges: Browning, Pregerson, Berzon